IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PATRICK HUGHES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-00218-N |
| | § | |
| BANK OF AMERICA CORP., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendants Bank of America Corporation ("BAC") and Computershare, Inc.'s ("Computershare") motion to dismiss [20]. Because the Court lacks personal jurisdiction over Defendants, the Court grants the motion.

### I. ORIGINS OF THE DISPUTE

This dispute arises from Plaintiff Patrick Hughes's requests for BAC to recognize his claimed ownership interest in BAC via possession of stock certificates. Hughes alleges that he purchased several stock certificates from the 1920s and 1930s that, due to a series of mergers involving the issuing entities, entitle him to an ownership interest in BAC. First Am. Compl. ¶ 8 [16]. Hughes sent a letter to Computershare, BAC's transfer agent, requesting recognition of his ownership interest in BAC. *Id.* ¶ 11. Hughes exchanged a series of letters with a Computershare office located in Kentucky and sent two payments to Kentucky for Computershare's required research fees before Computershare ultimately responded that the certificates did not entitle Hughes to an ownership interest in BAC. *See id.* ¶¶ 11-22.

ORDER – PAGE 1

Hughes filed this lawsuit against Defendants seeking specific performance and a declaratory judgment that the stock certificates give him an ownership interest in BAC. Additionally, Hughes raises a conversion claim against BAC only. Defendants filed a motion to dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6), and 28 U.S.C. § 2201. FED. R. CIV. P. 12. The Court first addresses Defendants' argument that the Court lacks personal jurisdiction.

## II.  LEGAL STANDARDS FOR PERSONAL JURISDICTION

A nonresident defendant is subject to the jurisdiction of a federal court sitting in diversity if (1) the forum state's long-arm statute confers personal jurisdiction overt that defendant and (2) exercise of personal jurisdiction by the forum state is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993). The Texas long-arm statute confers jurisdiction to the limits of the Constitution. *See id.*; *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984). "Because the Texas Long Arm Statute is coextensive with the confines of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of Constitutional constraints on Due Process." *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003); *see Gessmann v. Stephens*, 51 S.W.3d 329, 335 (Tex. App. — Tyler 2001, no pet.).

The Due Process Clause of the Fourteenth Amendment limits the reach of a state court's — and thus a federal court's — jurisdiction over a nonresident defendant. *See Shaffer v. Heitner*, 433 U.S. 186, 207 (1977). Specifically, due process requires that two

ORDER – PAGE 2

elements be satisfied. First, the nonresident must have purposefully established "minimum contacts" in the forum state such that he should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). Second, the exercise of personal jurisdiction must "comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). The minimum contacts analysis required by due process ensures that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Id.* at 472.

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Specific jurisdiction exists if (1) the cause of action is related to, or arises from, the defendant's contacts with the forum, and (2) those contacts meet the due process standard. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). General jurisdiction, on the other hand, exists where the claim is unrelated to the nonresident's contacts with the forum, but where those contacts are "so 'continuous and systematic' as to render [the nonresident] essentially at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). Under either a general or specific jurisdiction analysis, however, the "constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (quoting *Burger King*, 471 U.S. at 474).

ORDER – PAGE 3

A court must consider the totality of the circumstances of a case when making the purposeful availment inquiry, as "no single factor, particularly the number of contacts, is determinative." *Id.* at 1192. "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982).

Hughes, as the party seeking to invoke the Court's power, bears the burden of establishing the Court's jurisdiction over a foreign defendant. *See Pervasive Software Inc. v. Lexware GmbH & Co., KG*, 688 F.3d 214, 219 (5th Cir. 2012) (collecting cases). If a district court, as here, decides a motion to dismiss without holding an evidentiary hearing, a prima facie case suffices to establish jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). A court must take uncontroverted allegations in the complaint as true, and it must resolve all factual conflicts in favor of the plaintiff. *Pervasive Software*, 688 F.3d at 219-20 (citing *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)). In deciding the motion, a court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (quoting *Thompson*, 755 F.2d at 1165). "But even if the court receives discovery materials, unless there is a full and fair hearing, it should not act as a fact finder and must construe all disputed facts in the

plaintiff's favor and consider them along with the undisputed facts." *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

### III. THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

As an initial matter, Defendants are not subject to general jurisdiction in Texas, and Hughes does not argue otherwise. Corporations are typically subject to general jurisdiction in "two paradigmatic places: (1) the state of incorporation and (2) the state where it has its principal place of business." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 (5th Cir. 2020). BAC is a Delaware corporation with its principal place of business in North Carolina, and Computershare is a Delaware corporation with its principal place of business in Massachusetts. First Am. Compl. ¶¶ 1-2. Nothing in the record demonstrates Defendants otherwise have contacts with Texas that are "so 'continuous and systematic' as to render them essentially at home" in Texas. *Goodyear*, 564 U.S. at 919. Thus, the Court can exercise personal jurisdiction over Defendants only if specific jurisdiction lies in this case.

The Fifth Circuit has articulated a three-step test for conducting the specific jurisdiction analysis:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (quoting *Seifarth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). Hughes bears the burden

ORDER – PAGE 5

to establish the first two prongs, after which the burden shifts to Defendants to establish the third. *Id.*

### A. The Court Lacks Specific Jurisdiction Over Computershare

Hughes alleges Computershare is subject to specific jurisdiction here because his claims arise from Computershare's "discussions, solicitations, and [Hughes's] payments leading up to [Defendants'] refusal to honor his shares." Pl.'s Resp. Br. 3 [22]. Specifically, Hughes argues Computershare purposefully directed its activities at Texas through the following conduct: (1) operating two Texas offices "at which it appears Computershare provides some of the same services"; (2) sending letters to Hughes in Texas;[1] (3) receiving Hughes's payments sent from Texas; (4) causing tortious injury in Texas; and (5) making a statement in a letter regarding escheatment of shares to the state. *Id.* at 5. However, as further explained below, the only jurisdictionally relevant contacts between Computershare and Texas are those relating to Computershare's operation of its Texas offices.

Computershare's physical presence in Texas through operation of Texas offices constitutes purposeful availment of the privileges of conducting activities in Texas and

---

[1] To the extent Hughes argues the possibility Computershare *may have* sent these letters from its Texas offices is jurisdictionally relevant, the Court notes that uncontroverted evidence shows the letters were sent from Kentucky. Hughes argues Defendants "only make[] assertions about where the correspondence was written from, as opposed to where fulfillment and mailing were accomplished—the very items that common sense would suggest, in light of Hughes' Texas location, might well have occurred from Computershare's Texas offices." Pl.'s Resp. Br. 5. However, Defendants provided a declaration that states the letters were also printed and mailed from Kentucky. Second Decl. of Peter Harrington ¶ 4 [21].

ORDER – PAGE 6

may support jurisdiction for certain claims. By contrast, Computershare's contact with an out-of-state party alone does not establish a purposeful contact with that party's state. In determining whether correspondence or negotiation with an out-of-state party constitutes purposeful contact with another state, relevant considerations include who initiated the contacts, *Monkton Ins. Servs., Ltd.*, 768 F.3d at 433-34, and whether the conduct created continuing obligations with residents of the forum state. *Burger King*, 471 U.S. at 476. Here, the relevant communications were initiated by Hughes, not Computershare, and the parties' exchange of letters resulted in no ongoing obligations or relationship in Texas. *See* First Am. Compl. ¶¶ 11-21. Computershare's response requiring a research fee for its services and accepting two payments do not meaningfully change the analysis. *See Garwell Ltd. P'ship v. Whitehead*, 2016 WL 3745677, at *2 (N.D. Tex. 2016) (holding the court lacked specific jurisdiction over out-of-state lawyer in client's home state when client solicited the lawyer's services and sent a retainer payment due to the lack of resulting obligations in the forum state). Computershare's actions in Kentucky sending correspondence to and accepting payments from Texas do not, without more, constitute jurisdictionally relevant contacts with Texas.

      The cases Hughes cites as supporting the exercise of jurisdiction over Computershare based on its dealings with Hughes are inapposite because they deal with intentional torts arising from the contents of communications sent to and targeting a forum. *See* Pl.'s Resp. Br. 6. Communications sent into a forum can indeed subject a party to personal jurisdiction when the contents of the communications themselves give rise to an intentional tort. *See, e.g.*, *Trois v. Apple Tree Auction Ctr.*, 882 F.3d 485, 490 (5th Cir.

ORDER – PAGE 7

2018). Critically, however, Hughes has not raised an intentional tort claim against Computershare. Thus, Computershare's letters and acceptance of payment do not support the exercise of specific jurisdiction over Computershare.

Finally, the statements in Computershare's letters mentioning escheatment are not evidence of further purposeful contacts with Texas. Hughes alleges "Defendants' actions reporting any such shares as escheated — including, as Defendants' correspondence alleges, Hughes' own shares — purposefully subjects Defendants to the jurisdiction of the state to which they allege they escheated any such shares." First Am. Compl. ¶ 34; *see* Pl.'s Resp. Br. 4. Hughes mischaracterizes the statement in Computershare's letter, which says "We are requesting research to determine what transpired with the above listed stock certificates, including details regarding whether the stock was transferred, sold, replaced, or escheated — and *if* [so], the respective dates, persons and entities involved." Computershare Letter [16-8] (emphasis in original). Nothing in the record shows an escheatment occurred, let alone in Texas. To the extent Hughes alleges an escheatment did occur in Texas, he does not allege sufficiently specific facts. This is plainly insufficient to show Computershare purposefully directed any conduct toward Texas in any meaningful way. Because Computershare's only jurisdictionally relevant contacts are its operation of Texas offices, Hughes must show his cause of action arises from or relates to that conduct. Hughes cannot do so.

Computershare merely operating Texas offices does not make it subject to this lawsuit in Texas because Hughes's claims are not related to Computershare's Texas business. While conducting extensive, suit-related business activities can in some

ORDER – PAGE 8

circumstances subject a party to specific jurisdiction there without direct causation, *Ford Motor Corp. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), Hughes has not alleged or produced evidence that Computershare's Texas offices systematically offer services so related to this particular controversy that Computershare is subject to jurisdiction in Texas for these claims. Merely doing business in a particular market is not enough. *See Johnson v. TheHuffingtonPost.com, Inc.*, 2021 WL 6070559, at *8-9 ("*Ford Motor* does not say . . . that *any* commercial activities in a state support specific jurisdiction over a defendant there.") (emphasis in original). Further, the generic statement that Computershare's Texas offices offer the same services by fulfilling "customer service, relationship management, call center, and mailing functions" does not establish the strong relationship among defendant, forum, and litigation contemplated in *Ford Motor Corp.* for non-causal suit-related conduct. First Am. Compl. ¶ 37; *see Ford Motor Corp.* 141 S. Ct. at 1028 (detailing Ford's systematic suit-related activity serving the forum state market for the specific car models at issue). Accordingly, the Court holds Hughes has not met his burden to show Computershare is subject to personal jurisdiction in Texas.

### B. The Court Lacks Specific Jurisdiction Over BAC

Hughes primarily argues that BAC is subject to jurisdiction in Texas because it routinely does business in Texas and, as BAC's agent, Computershare's contacts are imputed to BAC. *See* Pl.'s Resp. Br. 6-8. However, the Court determines that even if Computershare's contacts are properly imputed to BAC, the Court lacks specific jurisdiction over BAC.

Hughes argues BAC is subject to specific jurisdiction because BAC does business in Texas, is registered to do business in Texas, and has ten employees located in Texas. Pl.'s Resp. Br. 6. These allegations fail to establish jurisdiction for the same reasons as those regarding Computershare's Texas offices discussed above. Even continuous activity in a jurisdiction is insufficient where the suit does not arise from or relate to that activity. Nothing in the record connects BAC's business presence in Texas to Hughes's claims. The Court now turns to Hughes's factual allegations specific to BAC and the relevance of the additional tort claim against BAC for conversion.

Hughes's only additional jurisdictional allegations against BAC that materially differ from those against Computershare are the following: (1) BAC invited shareholders to inquire about shares via its website and SEC filings; and (2) BAC committed a tort against Hughes. First, the website and SEC filings do not constitute purposeful contacts with Texas at all, because they are both passive postings of information that do not target Texas in particular. *See* Pl.'s Ex. 11 [16-11]; Pl.'s Ex. 12 [16-12]; *Johnson v. TheHuffingtonPost.com, Inc.*, 2021 WL 6070559, at *2-3 (5th Cir. 2021). The website and SEC filings do not support the exercise of specific jurisdiction.

Hughes's intentional tort claim against BAC for conversion does not change the result here either. A court does not have jurisdiction over a defendant for an intentional tort claim merely because the plaintiff is a resident of the forum state. *Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). To support specific jurisdiction, the tortious conduct must be

ORDER – PAGE 10

aimed at or committed in the forum such as when the contents of a communication themselves give rise to an intentional tort. The relevant consideration in the context of conversion is where the defendant's conduct regarding the plaintiff's property occurred. *Cf. Pervasive Software, Inc.*, 688 F.3d at 229-30 (holding a foreign corporation was not subject to specific jurisdiction in Texas for conversion when it refused to return software to a Texas plaintiff after its lawful possession outside of Texas ended with the termination of a license); *Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 323 (5th Cir. 2020) (holding contract-related communications were not themselves tortious and were insufficient to establish personal jurisdiction for conversion claim because "the wrongful exercise of dominion and control over another's property must occur in the forum state"). Here, that conduct occurred where BAC refused to recognize Hughes's stock certificates, i.e., in Kentucky where Computershare prepared and sent the letters. *See* Second Decl. of Peter Harrington [21]. Thus, the Court also lacks personal jurisdiction over BAC as to Hughes's conversion claim.

      Finally, the Court notes that exercising jurisdiction over Defendants in this case would allow a plaintiff to unilaterally move stock certificates to any jurisdiction, request that a company honor them, and then bring suit in that jurisdiction when the company declines to do so. This is precisely the type of fortuitous, plaintiff-centric connection to a forum that courts have routinely rejected as a basis for specific jurisdiction. For all the reasons above, the Court lacks personal jurisdiction over both Computershare and BAC for Hughes's claims.

ORDER – PAGE 11

## CONCLUSION

Neither BAC nor Computershare is subject to general jurisdiction in Texas, and Hughes's claims do not arise from or relate to Defendants' conduct purposefully directed at Texas. Accordingly, the Court lacks personal jurisdiction over Defendants and grants the motion to dismiss.

Signed January 19, 2022.

_____
David C. Godbey
United States District Judge